**131 Nev., Advance Opinion 43**
IN THE SUPREME COURT OF THE STATE OF NEVADA

| ELIOT A. ALPER, TRUSTEE OF THE ELIOT A. ALPER REVOCABLE TRUST; SPACEFINDERS REALTY, INC.; AND THE ALPER LIMITED PARTNERSHIP, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE CHARLES M. MCGEE, DISTRICT JUDGE, Respondents, and WILLIAM W. PLISE, Real Party in Interest. | No. 64260 <br><br> **FILED** <br><br> JUN 25 2015 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK  |

Original petition for a writ of prohibition or mandamus challenging a district court order imposing contempt sanctions.

*Petition granted.*

Edward J. Hanigan, Henderson,
for Petitioners.

Cremen Law Offices and Frank J. Cremen, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, C.J.:

A bankruptcy court entered an order lifting the automatic stay to permit the district court to determine whether a judgment debtor's prior

SUPREME COURT
OF
NEVADA

(O) 1947A

15-19379

refusals to participate in debtor's examinations in the district court were subject to criminal contempt. The automatic stay provisions of the Bankruptcy Code do not stay "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1) (2012). In this writ proceeding, we must determine whether the subsequent district court order finding the judgment debtor in contempt but allowing him to avoid incarceration by participating in a debtor's examination exceeded the scope of the bankruptcy court's lift stay order. We conclude that it did because a contempt order that permits a judgment debtor to purge incarceration is civil in nature. We, therefore, grant the writ of prohibition.

## FACTS AND PROCEDURAL HISTORY

In August 2010, the district court entered judgment in excess of $16,000,000 against real party in interest William Plise and in favor of petitioner Eliot Alper.[1] Thereafter, Alper obtained an order for examination of Plise's assets and liabilities to satisfy the judgment.

Plise did not attend the first scheduled debtor's examination, and Alper moved for an order to show cause why Plise should not be held in contempt of court. The district court ordered Plise to appear, produce documents, and fully comply with the order or he would be held in contempt of court.

Plise appeared at the next scheduled exam, but asserted a Fifth Amendment privilege in response to every question except his name. Alper filed a status report indicating Plise did not produce the documents

---

[1]Petitioners in this action are Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust; Spacefinders Realty, Inc.; and the Alper Limited Partnership. We refer to the petitioners collectively as Alper.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

the court previously ordered him to produce, nor did he answer questions during the exam. At a subsequent status hearing, the district court ordered Plise to answer Alper's questions. Alper scheduled a new debtor's examination, and Plise requested several continuances, but ultimately Plise did not appear. Fifteen days later, Alper sought an order to show cause why Plise should not be held in contempt of court. But, two days before the hearing on that motion, Plise filed a bankruptcy petition.

Alper participated in the bankruptcy proceeding, and as a result, obtained an order from the bankruptcy court granting relief from the automatic stay and allowing the district court to "conduct a hearing and enter an order with regard to the alleged criminal contempt" of Plise. Alper again moved in district court for an order to show cause as to why Plise should not be held in contempt for his failure to appear at the debtor's examination. Plise opposed any order for contempt, arguing that, based on its punishment, contempt is a misdemeanor and the statute of limitations had run on any of Plise's alleged contemptuous conduct.

At the hearing, the district court found Plise guilty of contempt of court and sentenced Plise to 21 days incarceration. However, the district court also provided that Plise could purge his contempt and be released from confinement if he fully participated in a judgment debtor examination. In doing so, he could avoid serving the remainder of his sentence.

Alper filed this petition arguing that the district court exceeded the scope of the bankruptcy court's order granting relief from the automatic stay, thereby violating 11 U.S.C. § 362(a) (2012), when it conditionally allowed Plise to avoid criminal contempt punishment, thus transforming the contempt proceeding from criminal to civil. Plise responds by arguing that the statute of limitations had already run on any

criminal contemptuous conduct. Plise also argues that Alper waived his argument by not objecting during the sentencing.[2]

## DISCUSSION

*Writ relief is appropriate*

Alper petitions this court for a writ of prohibition, arguing that the district court exceeded the scope of the order lifting the automatic stay when it allowed Plise the opportunity to purge the contempt order.[3] A writ of prohibition is appropriate when "the proceedings of any tribunal, corporation, board or person exercising judicial functions . . . are without or in excess of the jurisdiction of such tribunal, corporation, board or person." NRS 34.320. While an appeal is typically an adequate legal remedy precluding writ relief, *see Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 223-24, 88 P.3d 840, 840-41 (2004), because "[n]o rule or statute

---

[2]Since the July 24, 2013, contempt hearing was not recorded, there is no transcript available for review. When no trial transcript exists, NRAP 9(c) provides the appropriate procedure for generating an accurate record of what took place. Absent a transcript or properly submitted statement, this court cannot determine what occurred during the hearing in this case, and we, therefore, do not consider Plise's waiver argument. *See Carson Ready Mix, Inc. v. First Nat'l Bank of Nev.*, 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (observing that this court does not consider matters not properly appearing in the district court record on appeal).

[3]In the alternative, Alper petitions for a writ of mandamus compelling the district court to vacate that portion of its contempt order giving Plise the opportunity to purge. However, a writ of prohibition is a more appropriate remedy because at issue is whether the district court exceeded the scope of the bankruptcy court order lifting the stay. *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) ("A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." (footnote omitted)).

authorizes an appeal from an order of contempt[,] . . . contempt orders must be challenged by an original petition pursuant to NRS Chapter 34." *Pengilly v. Rancho Santa Fe Homeowners Ass'n*, 116 Nev. 646, 649, 5 P.3d 569, 571 (2000).

*The opportunity to purge in the contempt order converted the criminal sanction to civil and thus exceeded the authority granted by the bankruptcy court's lift stay order*

Generally, an automatic stay under § 362 of the United States Bankruptcy Code stays the initiation or continuation of all state actions against the debtor that precede the filing of the bankruptcy petition. 11 U.S.C. § 362 (2012). However, § 362(b)(1) provides that the filing of a petition in bankruptcy "does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor." The Bankruptcy Code does not define "criminal action," but several bankruptcy courts have held that criminal contempt, but not civil contempt, is included as a criminal action and these proceedings are not subject to the stay.[4] *See, e.g., In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996).

Here, the bankruptcy court granted relief from the automatic stay, permitting the district court to "conduct a hearing and enter an order with regard to [Plise's] alleged criminal contempt" in the state court action. The district court did so, finding Plise's conduct contemptuous and subject to criminal punishment in the form of confinement in the detention center for 21 days. That punishment was conditional, however, because

---

[4]Section 362(a) ordinarily stays a civil-contempt proceeding because, by definition, such a proceeding is not criminal in nature. *See In re Gindi*, 642 F.3d 865, 871 (10th Cir. 2011) (citing *In re Wiley*, 315 B.R. 682, 687 (Bankr. E.D. La. 2004)), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

the district court also allowed Plise to avoid confinement if he complied with the debtor's examination at any time during the 21-day sentence. Accordingly, we must determine whether the district court's contempt order exceeded its authority because it became civil in nature, not criminal.

*The criminal/civil distinction in contempt sanctions*

This court has previously explained that "[w]hether a contempt proceeding is classified as criminal or civil in nature depends on whether it is directed to punish the contemnor or, instead, coerce his compliance with a court directive." *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 804, 102 P.3d 41, 45 (2004). Criminal sanctions punish a party for past offensive behavior and are "unconditional or determinate, intended as punishment for a party's past disobedience, with the contemnor's future compliance having no effect on the duration of the sentence imposed." *Id.* at 805, 102 P.3d at 46; *see also Warner v. Second Judicial Dist. Court*, 111 Nev. 1379, 1383, 906 P.2d 707, 709 (1995) (concluding that a contempt order of "a set term of eleven months imprisonment" was punitive and criminal in nature). Civil sanctions, on the other hand, are

> remedial in nature, as the sanctions are intended to benefit a party by coercing or compelling the contemnor's future compliance, not punishing them for past bad acts. Moreover, a civil contempt order is indeterminate or conditional; the contemnor's compliance is all that is sought and with that compliance comes the termination of any sanctions imposed.

*Rodriguez*, 120 Nev. at 805, 102 P.3d at 46 (footnote omitted); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (explaining that civil contempt sanctions "are considered to be coercive and avoidable through obedience"). Alper argues that the conditional

provision of the contempt order allowing Plise to be released from incarceration directly to a judgment debtor examination transforms the sanction from criminal to civil. We agree.

The contempt sanction here is civil in nature because it was intended to compel Plise's obedience with the district court's order requiring him to submit to a debtor exam for the benefit of Alper, not as a punishment for Plise's refusals to obey prior court orders. The district court ordered Plise "sentenced to confinement in the Clark County Detention Center for a period of twenty-one (21) days." This language alone is a criminal sanction: it punishes Plise for past behavior with a set term of imprisonment. *See Warner,* 111 Nev. at 1383, 906 P.2d at 709. However, the order further stated that Plise "may be released directly to an Examination of Judgment Debtor Hearing without serving the remainder of the twenty-one day sentence." When the district court included this opportunity to purge the imprisonment, it put a civil remedy in the place of the punishment—Plise would only remain imprisoned until he submitted to the judgment debtor examination. This opportunity to purge is coercive, as it provides Plise an option to avoid incarceration or obtain early release if he submits to the examination.

## CONCLUSION

Because the district court's order is civil in nature, the district court exceeded the scope of its authority granted by the bankruptcy court. We therefore grant the petition and direct the clerk of this court to issue a

writ instructing the district court to vacate its contempt order and conduct further proceedings consistent with this opinion.[5]

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Pickering

---

[5]Because we grant the petition and the contempt order will thus be vacated, we do not address Plise's contention that any criminal order would violate the statute of limitations. Thus, we leave this issue for the district court to resolve if further proceedings are conducted in this case.

Determining the applicable statute of limitations for both criminal and civil contempt is a matter of first impression in Nevada as no statute defines the statute of limitations for contempt. A few state supreme courts have addressed the issue regarding criminal contempt and, similar to Plise's argument, likened criminal contempt to a misdemeanor based on its maximum punishment. *Or. State Bar v. Wright*, 785 P.2d 340, 342 (Or. 1990) (likening the maximum punishment for criminal contempt to a misdemeanor and analogizing that the statute of limitations for criminal contempt is the same as other misdemeanors—two years); *see also State ex rel. Robinson v. Hartenbach*, 754 S.W.2d 568, 570 (Mo. 1988) ("Because contempt is *sui generis*, it could be, and in this case is, controlled by the statute of limitations applicable to misdemeanors although it is not a 'crime' within the meaning of the criminal code."). Other states have statutorily codified criminal contempt as a misdemeanor. *See, e.g.*, Cal. Penal Code § 166 (West Supp. 2015); Haw. Rev. Stat. § 710-1077(2) (2014); Mich. Comp. Laws Ann. § 4.83 (West 2013).

On the other hand, there is little information in other jurisdictions regarding the statute of limitations for civil contempt. At least one state supreme court has concluded that no statute of limitations exists for civil contempt. *State v. Schorzman*, 924 P.2d 214, 216 (Idaho 1996). In addition, other courts have indicated that the equitable defense of laches may apply. *See, e.g., Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 803 (N.D. Ohio 2005).